IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                      No. 11-cr-2294 RB

**RICK REESE,**
**TERRI REESE,**
**RYIN REESE, and**
**REMINGTON REESE,**

      Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on Remington Reese's Motion and Amended Motion for Rule 44 Hearing to Determine Counsel. (Doc. 64, filed October 13, 2011, and Doc. 65, filed October 17, 2011, respectively). The Court conducted a hearing on November 2, 2011. Having considered the submissions and arguments of counsel, relevant law, and being otherwise fully advised, the Court finds that its independent interest in ensuring the Reese family a fair trial precludes the law firm of Bregman & Loman, P.C. from jointly representing Defendants in this matter.

**I.    Background**

On August 24, 2011, a federal grand jury returned a 30-count indictment charging Rick Reese, his wife Terri, and their sons Ryin (24 yrs) and Remington (19 yrs), all of whom operated the federally-licensed firearms store "New Deal Shooting Sports" located in Deming, New Mexico, with conspiracy (Count I), making false statements in connection with the acquisition of firearms (Counts 2 - 10), smuggling goods from the United States (Counts 11 - 28), and money laundering conspiracies (Counts 29 - 30) over a roughly 16-month period. The Indictment

charges Defendants with varying levels of involvement and culpability in the alleged illegal activities.

United States law enforcement authorities arrested Defendants on August 30, 2011, following an approximately seven-month investigation. (United States' Unopposed Motion to Declare this Case to be Complex, Doc. 58, filed Sept. 27, 2011, at 1). On September 2, 2011, United States Magistrate Judge Gregory Wormuth held a case management hearing focused on appointment of counsel. Judge Wormuth evaluated Defendants' financial affidavits and determined that the Court would appoint separate counsel to each member of the Reese family. (*See* Docs. 13-16). Judge Wormuth observed that Rick and Terri Reese would likely be required to reimburse the government for expenses incurred from representation by court-appointed counsel because their financial affidavits disclosed significant illiquid assets from which they could finance their defense. (*See* Docs. 13 & 14). Judge Wormuth appointed counsel to Ryin and to Remington Reese without requiring them to reimburse the government for representation. (*See* Docs. 15 & 16).

On September 28, 2011, the Court granted the government's Unopposed Motion to Declare this Case to be Complex. (Doc. 61).

On October 17, 2011, attorneys Sam Bregman and Eric Loman of Bregman & Loman, P.C., filed a Motion for Substitution of Counsel requesting to enter their appearance on behalf of Defendant Rick Reese. (Doc. 66). The Court granted this motion on October 18, 2011. (Doc. 67).

Prior to filing this motion, Bregman & Loman, P.C. had contacted the court-appointed attorney for Remington Reese, Paul Rubino, to request that he allow attorney Eric Loman to

replace him as attorney of record for Remington. At that time, Bregman & Loman, P.C. indicated to Rubino that they intended to represent all four members of the Reese family. In response, Rubino filed a Motion and Amended Motion for Rule 44 Hearing to Determine Counsel (Doc. 64, filed October 13, 2011, and Doc. 65, filed October 17, 2011, respectively) upon the belief that "a conflict of interest exists and/or will arise should one law firm and/or one attorney represent all four defendants in this matter at the same time." (Doc. 65 at ¶ 6). Court-appointed counsel for Ryin and Terri Reese both concur in attorney Rubino's Amended Motion. The United States filed its Response on October 28, 2011, in which it declared its agreement with Rubino that, pursuant to Federal Rule of Criminal Procedure 44, the Court should conduct a hearing to determine whether the joint representation of all four defendants by Bregman & Loman, P.C. raised actual or potential conflicts of interest. (Doc. 69). The Response also highlighted several specific conflicts that could arise as a result of joint representation.

 Bregman & Loman, P.C. filed its Response to Amended Motion for Rule 44 Hearing on October 28, 2011 (Doc. 70), stating that Rick Reese's mother had contacted Bregman & Loman, P.C. seeking representation for her family and that Sam Bregman had visited each member of the Reese family at their respective detention centers to discuss the possibility of representation. Bregman contends that while he did not discuss the facts of the case with the defendants in any detail, he did raise with each defendant the possibility of conflicts of interest developing were he to represent all four family members. Bregman states that his discussions with the defendants "satisfied" him that no potential conflicts would arise in this case. (Doc. 70 at 1). According to Bregman & Loman, P.C. "each Defendant expressed his or her desire to be represented by Mr. Bregman and his partner, Eric Loman," and "[e]ach Defendant also signed a retainer agreement."

(Doc. 70 at 1-2).

A hearing on this matter was held on November 2, 2011. (Doc. 68). Plaintiff appeared by and through counsel, Nathan Lichvarcik and Michael Nammar, Assistant United States Attorneys. Defendants appeared in person and through counsel Sam Bregman and Eric Loman for Rick Reese, Paul Rubino for Remington Reese, Leon Schydlower for Terri Reese, and Santiago Hernandez for Ryin Reese. The matter is now ready for decision.

**I.     Discussion**

The Court finds that the proposed joint representation raises serious potential conflicts of interest, and that despite Defendants' proffer of voluntary and intelligent waivers, this Court's independent interest in ensuring that Defendants receive a fair trial precludes Bregman & Loman, P.C. from representing multiple members of the Reese family.

    **A.**     *Actual or Potential Conflicts of Interest*

        **1.**     *Sixth Amendment Right to Reasonably Effective Assistance of Counsel*

The Sixth Amendment to the United States Constitution guarantees defendants the right to effective assistance of counsel in criminal prosecutions. *United States v. Burney*, 756 F.2d 787, 790 (10th Cir. 1985). "[T]he proper standard for attorney performance is that of reasonably effective assistance," *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which the Tenth Circuit has characterized as the "exercise [of] the skill, judgment and diligence of a reasonably competent defense attorney." *Burney*, 756 F.2d at 790 (citing *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir. 1980)). Because the primary focus of this right is to ensure that defendants receive a fair trial, the Supreme Court has observed:

> While the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment

is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

*Wheat v. United States*, 486 U.S. 153, 159 (1988).

Thus, a defendant's right to be represented by his counsel of choice is limited in certain critical respects, including circumstances where – as here – an attorney's intent to represent multiple defendants may raise conflicts of interest which undermine his ability to serve as the *effective* advocate contemplated by the Sixth Amendment. *Id.* at 159-60.

Many courts have recognized that representation of co-defendants raises considerable potential for conflicts of interest. *Burney*, 756 F.2d at 790. Where courts are alerted to possible conflicts derived from joint representation, they "must take adequate steps to ascertain whether the conflicts warrant separate counsel." *Wheat*, 486 U.S. at 160. Federal Rule of Criminal Procedure 44(c) guides this inquiry and directs that trial courts:

> promptly inquire about the propriety of joint representation and . . . personally advise each defendant of the right to the effective assistance of counsel, including separate representation. <u>Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel</u>.

FED. R. CRIM. P. § 44(c) (emphasis added).

A trial court initiating this inquiry must begin with a presumption in favor of the defendant's counsel of choice. *Wheat*, 486 U.S. at 164. Indeed, joint representation can be "a means of insuring against reciprocal recrimination. A common defense often gives strength to a common attack." *Holloway v. Arkansas*, 435 U.S. 475, 482-83 (1978) (citing *Glasser v. United States*, 315 U.S. 60, 70 (1942)). Further, "[a]n attorney representing [multiple] defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict

of interest exists or will probably develop in the course of a trial." *Id.* at 485 (citing *State v. Davis*, 110 Ariz. 29, 514 P.2d 1025 (1973)).   As a corollary, defense attorneys have the obligation, upon discovering a conflict of interests,to advise the court at once of the problem. *Id.* at 486.  Courts should also credit the fact that " '[a]ttorneys are not fungible' . . . often 'the most important decision a defendant makes in shaping his defense is his selection of an attorney.' " *United States v. Collins*, 920 F.2d 619, 625 (10th Cir. 1990) (citing *United States v. Laura*, 607 F.2d 52, 56 (3d Cir.1979)).  Finally, trial courts must consider the possibility whether the government is seeking to "manufacture" a conflict in order to prevent a defendant from having a particularly able defense counsel at his side. *Wheat*, 486 U.S. at 163.

Once a court has acknowledged the presumption in favor of a defendant's chosen counsel, that presumption may be overcome by either a demonstration of actual conflict or by a showing of a serious potential for conflict. *Id.* at 164.  In cases of joint representation, conflicts may arise in situations where defendants' interests "diverge with respect to a material factual or legal issue or to a course of action," *Cuyler v. Sullivan*, 446 U.S. 335, 356 n.3 (1980);  "when counsel cannot use his best efforts to exonerate one defendant for fear of implicating the other," *United States v. Kaufman*, 354 F. Supp. 2d 1201, 1204 (D. Kan. 2005) (citing *Dokes v. Lockhart,* 992 F.2d 833, 836 (8th Cir.1993)); or "whenever one defendant stands to gain significantly by advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing." *Id.* at 1204 (*citing United States v. McCaskey*, 9 F.3d 368, 381 (5th Cir.1993)).

Ultimately, "[j]oint representation of conflicting interests is suspect because of what it tends to prevent an attorney from doing." *Holloway* , 435 U.S. at 489-90.  Attorneys may be

unable to challenge the admission of evidence prejudicial to one client but possibly favorable to another, to explore possible plea negotiations, or to argue at a sentencing hearing regarding the relative involvement and culpability of one client at the potential expense of another. *Id.* Furthermore, joint representation may be particularly problematic where an attorney proposes to defend multiple conspirators in an alleged complex illegal scheme. *See, e.g., Wheat*, 486 U.S. at 163. Similarly, where "the available evidence points to significantly different levels of culpability" between the jointly represented defendants, *United States v. Stantini*, 85 F.3d 9, 19 n.8 (2d Cir. 1996), conflicts may be more likely to arise. Such conflicts may affect representation at any stage of a case, including plea negotiations, trial, or sentencing hearings. *See Holloway v.* 435 U.S. at 490-91.

In light of the foregoing considerations, the Court will now turn to the potential for specific conflicts posed by joint representation in the instant case.

> 2. *Actual and Potential Conflicts of Interest Posed by Joint Representation in the Pending Case*

At this time, attorneys Sam Bregman and Eric Loman of Bregman & Loman, P.C. represent only defendant Rick Reese. Terri, Ryin, and Remington Reese remain represented by their respective court-appointed attorneys. However, each of the three remaining defendants has expressed his or her desire to retain Bregman & Loman, P.C. as defense counsel and has signed a retainer agreement to that effect.

At the hearing conducted in this matter on November 2, 2011, attorney Bregman argued that Defendants' intent to present a unified defense will prevent the evolution of conflicts of interest. Although he acknowledged that he had not discussed the facts of the case with Terri, Ryin, or Remington in any detail, he stated that he had raised the subject of potential conflicts

with each defendant and had attempted to discern whether anyone intended to "point [a] finger" at anyone else. (Transcript of Rule 44 Hearing, Doc. 74, at 6:9-11). He concluded that his discussions with Defendants satisfied him that no conflicts of interest would arise.

Despite Bregman's confidence that no conflicts will develop as a result of joint representation, the Court agrees with the government that Bregman & Loman, P.C.'s proposed representation of all four defendants poses serious potential for conflict. The Court does not doubt Defendants' intention to present a unified defense in the face of the pending charges. However, it is unable to accept Bregman's unfounded assertion that no conflict will develop given that (1) Bregman has not yet discussed the facts of the case in any detail with Terri, Ryin, or Remington, and therefore cannot have adequately explored the myriad potential conflicts posed by joint representation in this case; (2) Bregman has not yet had access to discovery materials provided by the government to counsel for Terri, Ryin, or Remington, and therefore lacks sufficient information upon which to base his firmly-held belief that no conflicts will arise; and (3) the complexity of the charges against the Reese family, as well as Defendants' varying levels of alleged involvement and culpability, makes this case particularly vulnerable to significant conflicts of interest that may impermissibly trespass upon Defendants' Sixth Amendment right to effective counsel.

The Indictment makes clear distinctions among Defendants regarding their involvement in the alleged illegal scheme, making it more likely that their independent interests could eventually diverge on legal issues, factual issues, or on general defensive strategy. Rick Reese, for example, is charged with five counts (1, 9, 26, 29, & 30) and five overt acts (10 & 30-33) on two discrete dates. Terri Reese is charged with seven counts (1, 10, 22, 24, 27, 29, & 30) and

eight overt acts (8, 9, 20, 22, 23, 25, 28 & 29) on five different dates. Remington Reese is charged with nine counts (1, 13, 16, 18, 21, 25, & 28) and eight overt acts (13-16, 18, 19, 22, & 29) on at least four dates. Ryin Reese is charged with 18 counts (1, 2-8, 11, 12, 13, 15, 17, 19, 20, & 23) and seventeen overt acts (1, 3, 4, 6, 11, & 16-27) on no fewer than eight different dates. In addition, the United States contends that Defendants' actions and quotes caught on tape during the government's investigation reveal varying levels of egregiousness. (United States' Response to Def. Remington Reese's Amended Mot. for Rule 44 Hearing to Determine Counsel, Doc. 69, at 14). Thus, the Court is not presented with the situation where an attorney "wish[es] to represent two coequal defendants in a straightforward criminal prosecution" *Wheat*, 486 U.S. at 163-64; rather, much like in *Wheat*, Bregman & Loman, P.C. intends to represent four defendants of varying stature, facing various charges, in an alleged complex firearms and money laundering conspiracy spanning a period of sixteen months.

Under these circumstances, joint representation may preclude conflicted counsel from pursuing defensive tactics that would otherwise be available. For example, in pretrial negotiations with the government, conflicted counsel may be unable to freely advise any individual member of the Reese family as to whether he or she should cooperate with the government, plead guilty, or continue onward to trial, because the consequence of such advice to one client could ultimately implicate another. *See, e.g.*, *Thomas v. Foltz*, 818 F.2d 476, 481-81 (6th Cir. 1987) (finding an actual conflict of interest existed where an attorney who was jointly representing three co-defendants was precluded from engaging in separate plea negotiations on behalf of one defendant which may have been detrimental to the interests of the other two). The United States additionally points out that Rick and Terri Reese are differently situated than sons

9

Ryin and Remington in that they have significantly more to lose on the forfeiture side of the Indictment, creating different incentives in potential pretrial plea negotiations.

In addition, blame shifting – or attempting to minimize one's culpability as compared to other co-defendants – is a tactic often employed by defense attorneys at the pretrial, trial, and sentencing phases of criminal prosecutions. Such a strategy may be particularly viable where there is a significant discrepancy among defendants in the type or number of charges filed. Were Bregman & Loman, P.C. to represent all four members of the Reese family, counsel would be unable to engage in blame shifting which could be highly favorable to one client because it would necessarily implicate the guilt of another. As pointed out by the United States in its Response, some degree of blame shifting may have already occurred in pretrial proceedings. At Defendants' detention hearings, for example, Remington Reese was arguably portrayed as the youngest and most vulnerable defendant – unlikely to be the leader of the group. Similarly, Rick Reese's then-attorney emphasized that Rick's involvement in the alleged scheme was largely limited to a single date: July 29, 2011. Where a conflict-free attorney may be able to exploit these facts for the benefit of an individual defendant, conflicted counsel may be unable to do so without flagging another defendant's increased culpability. *See e.g. United States v. Romero*, 780 F.2d 981, 986 (11th Cir. 1986) (finding an actual conflict of interest existed where a blame shifting defense was a "feasible" option that an attorney was unable to pursue due to his joint representation of defendants).

Other courts have found an actual conflict of interest to exist where an attorney is prevented from advising a client on an offer of immunity in exchange for testimony against a co-defendant. *See, e.g., United States v. Migliaccio*, 34 F.3d 1517, 1526 (10th Cir. 1994). In

*Migliaccio*, two doctors were convicted in district court of conspiracy to defraud the United States, as well as of mail fraud stemming from the filing of false claims with the Civilian Health and Medical Program of the Uniformed Services. Both doctors were represented by a single attorney. Before trial, the government offered one of the doctors informal immunity in exchange for truthful information which could be used against the other defendant. The Court found that the government's offer forced counsel into the position of "refrain[ing] from counseling [one doctor] to accept the offer of immunity in order to protect [the other doctor's] status or to maintain his own attorney-client relationship with [the doctor to whom the government had not offered immunity]." *Id.* The court found the actual conflict in *Migliaccio* to be "patent." *Id.* Although the Court cannot speculate as to whether the government may offer immunity to one or more members of the Reese family in exchange for testimony, it must acknowledge the possibility that this could occur. Should the government offer immunity to any defendant, and particularly should a defendant later choose to avail himself or herself of such an offer, counsel Bregman & Loman, P.C. will face an actual and substantial conflict.

Several potential conflicts could similarly arise if this case proceeds to trial. Should one of the defendants wish to testify, for example, conflicted counsel could face the precarious situation of eliciting testimony favorable to the defendant on the stand while simultaneously subjecting that defendant to cross-examination which could prejudice the remaining defendants. Further, because defendants are charged with a variety of different overt acts in furtherance of the alleged conspiracy, even direct examination favorable to one defendant has the potential to negatively impact other defendants' interests.

Similar problems may present themselves in regard to cross-examination of government

witnesses. In its Response, the United States states that it anticipates offering an agent's testimony declaring that Ryin Reese, in an alleged post-*Miranda* confession, "took full blame for the crimes and said that Terri, Rick, and Remington were not involved in the crimes." (United States Response, at 16-17). This alleged inculpatory statement may be favorable to Rick, Terri, and Remington Reese, but could be harmful to Ryin Reese's defense. This would present conflicted counsel with severe difficulties in determining whether to object to the statement's admissibility. Further, were this evidence to be admitted, conflict-free counsel would be able to emphasize the alleged statement on cross-examination whereas conflicted counsel would be precluded from pursuing this line of questioning because it would cast culpability on Ryin. *See, e.g.*, *United States v. Gharbi*, 510 F.3d 550, 553 (5th Cir. 2007) (affirming the district court's decision to disqualify a defendant's requested attorney because that attorney was already representing the defendant's co-defendant daughter; under these circumstances, the court found that it was impossible to guess whether defense counsel would " 'pull punches on cross examination,' thereby providing ineffective assistance to Gharbi.")

Finally, if Defendants are ultimately convicted, conflicted counsel will be unable to argue that a lesser sentence be imposed on any individual member of the Reese family based on relative culpability because this would highlight fault on the part of the remaining defendants.

Thus, despite attorney Bregman's assurances that no conflicts are likely to develop, the Court can readily foresee serious potential for conflict.

B.   *Waiver*

The Court having found that joint representation of the Reese family presents serious potential for conflict must now determine whether Defendants' waiver of conflict-free counsel

constitutes an adequate remedy under the circumstances. Despite the significant weight given to Defendants' choice of counsel, as well as Defendants' assertions that they will waive any actual conflicts which may develop over the course of these proceedings, the Court finds that the potential for serious conflict in this case warrants preclusion of joint representation.

Rule 44(c) does not specify what measures may be taken upon a district court's finding of an actual or serious potential conflict. One possible course of action is for the court to obtain a knowing, intelligent, and voluntary waiver of the right to separate representation. *See* Advisory Committee Notes to 1979 Amendment. However, "[a] waiver of the right to separate representation should not be accepted by the court unless the defendants have each been informed of the probable hazards, and the voluntary character of their waiver is appropriate." *Id*.

At the November 2, 2011 hearing, the Court advised defendants of their right to independent counsel, informed them of a variety of probable pitfalls stemming from joint representation, and questioned them extensively regarding their intent to waive their right to conflict-free representation. Defendants, individually, expressed that they understood the risks inherent in joint representation and that their waivers were knowing, voluntary and intelligent. While the Court does not question Defendants' conviction on these points, it does not believe it is possible at this early stage for the waivers to be truly "knowing." Knowing waivers require that defendants fully understand the nature of the situation. *See e.g. United States v. Winkle*, 722 F.2d 605, 611 (10th Cir. 1892). This criminal proceeding is in its infancy. Defendants were arrested on August 30, 2011. At the time of the hearing, defendants Terri, Ryin and Remington Reese had determined to retain new counsel with whom they had not discussed the facts of the case, and they had not yet had the opportunity to fully review the considerable amount of

discovery provided by the government. (*See* United States' Motion to Declare Case Complex, Doc. 58 at 1, stating that Defendants will likely receive over 14 gigabytes of electronic discovery including reports, photographs, and video from the execution of the search warrant). Given these facts, it is not possible at this point for the attorneys, defendants, or even the Court to fully appreciate the width and breadth of specific, albeit potential, dangers posed by joint representation in the instant case.

Even if the Court were to find that Defendants' waivers were knowing, the inquiry would not be complete. In addition to protecting defendants' right to effective representation, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160. Trial courts may also be legitimately concerned that their final judgments remain intact on appeal. *Id.* Pairing these considerations with Defendants' intention to waive conflict-free counsel engenders special difficulties at this early juncture because the Court must "pass on the issue whether or not to allow a waiver . . . not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." *Id.* at 163. As stated by the Supreme Court in *Wheat*:

> The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers

>from his clients may bear an inverse relation to the care with which he conveys
>all the necessary information to them.

*Id.* at 163-64.

For these reasons, district courts are "allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 164.

In this case, there are simply too many potential problems posed by joint representation to permit Bregman & Loman, P.C. to represent multiple members of the Reese family. In addition to the specific potential conflicts of interest discussed above, the complexity of the pending case makes it more likely that Defendants' interests will diverge at some point in the course of these proceedings and give rise to conflicts unforeseen. This possibility is particularly problematic where, as here, the attorney attempting to represent multiple co-defendants is either unsure or unwilling to acknowledge that some conflicts are too egregious to be waived. At the November 2, 2011 hearing, the Court asked Mr. Bregman whether, as a general theoretical matter, there are some conflicts which are unwaivable. Mr. Bregman responded that he did not know the answer, to which the Court replied, "[w]ell, I think the cases tell me that the answer to that question, theoretically, is yes." (*See* Rule 44 Hearing Transcript, Doc. 74, at 27:13-19). Mr. Bregman's response is troublesome because it conveys a reluctance to embrace even the possibility that unwaivable conflicts could arise in this case. Such a disposition could inhibit Mr. Bregman's ability or willingness to fully advise Defendants regarding the impact of actual or serious potential conflicts should they emerge going forward.

In a similar vein, Mr. Bregman did not address how he would deal with the specific

potential conflicts identified by the government. In response to the Court's questioning of how he would address the alleged inculpatory statement by Ryin Reese discussed above, Mr. Bregman responded that "[t]heoretically, [he would] deal with it like anything else . . . determine what's best for [his] client's interest, and . . . move forward." (*See* Rule 44 Hearing Transcript, Doc. 74, at 29:24-25 - 30:1). This response begs the question: which client's interest? As noted above, counsel representing Rick, Terri, or Remington may choose to pursue Ryin's statement as exculpating the remaining defendants; conflicted counsel, by contrast, would be unable to do so because this could highlight culpability on the part of Ryin.

In addition, the fact that Defendants are all members of the same immediate family creates a unique dynamic that could bear upon potential future conflict. It is conceivable that family ties of love and loyalty may predispose Defendants to request joint representation out of a desire to protect their family as a unit, rather than to defend themselves based on individual interests. *See, e.g.*, *United States v. Cooper*, 672 F. Supp. 155, 159 (D. Del. 1987) ("Because defendants are family members, they may not be acting out of self-interest in choosing joint representation, but rather out of an interest to protect the family as a unit.") The Court expressed this concern to Defendants when it stated that it "fe[lt] as though [it was] getting a monolithic response" during the questioning portion of the hearing. (*See* Rule 44 Hearing Transcript, Doc. 74, at 52:6-9). As recognized by other courts, "the potential for conflict is heightened where defendants have a close relationship." *United States v. Self*, 2009 WL 5171729, at *4 (E.D. Pa. Dec. 30, 2009) (citing *United States v. Joyce*, 257 Fed. Appx. 501, 505 (3d Cir.2007)). Thus, "a conflict waiver from a co-defendant family member may be suspect, particularly where the joint defendants' best defense is to implicate one another." *Id.*; *see also United States v. Martel*, 958

F. Supp. 211, 216 (D.N.J. 1997) ("[T]he relationship between these two defendants and the other 'family members' who have retained counsel for them, while suggesting one reason they might decide to present a united front, also suggests that the defendants may not fully appreciate the important rights which are protected by separate counsel.")  Furthermore, the special dangers posed by familial relationships in cases of joint representation are not limited to defendants' initial proffer of waivers, but rather can affect defendants' independent decision making throughout the course of their defense.

The Sixth Amendment guarantees the right of effective counsel to individuals, and this right takes precedence over Defendants' desire to present a united front.  Individual representation does not preclude Defendants from offering a common defense.  Facts gleaned from discovery may lead each attorney to the conclusion that a unified defense would be the most effective approach.  Defendants may even opt for a joint defense agreement if the circumstances favor such a strategy.  Individual counsel should not be perceived as disbanding the family unit, but rather as a tool for ensuring that Defendants are advised of their full range of defensive options.

Finally, "the obligation placed upon the court by Rule 44(c) is a continuing one, and in a particular case further inquiry may be necessary at a later occasion because of new developments suggesting a potential conflict of interest."  *United States v. Renda*, 669 F. Supp. 1544, 1550 (D. Kan. 1987).  Were the Court to allow joint representation at this point in time, it would be required to carefully monitor the progression of these proceedings in order to guard against conflicts of interest that may develop or worsen as circumstances change.  Should an actual and clearly prejudicial conflict arise at some point in the future, Defendants' prior waivers could be

rendered invalid. *See United States v. Migliaccio*, 34 F.3d 1517, 1528 (10th Cir. 1994). In that circumstance, any of the defendants could decide not to waive a new conflict or the Court could determine that such a conflict was not waivable. Given the complexity of this case, the varying charges against defendants, and the distance yet to be covered in these proceedings, such a scenario does not stretch the Court's imagination. Thus, were an actual conflict to arise, Bregman & Loman, P.C. could potentially be disqualified from representing any member of the Reese family and the defendants would be required to obtain new counsel lacking substantial familiarity with the facts. *See, e.g.* Transcript of Rule 44 Hearing, Doc. 74, at 25:13-17 (court-appointed attorney for Terri Reese, Leon Schydlower, stating: "If the Court does find a conflict, we're sitting on a lot of discovery, and it would be hard, if you find a conflict later on in the case, for another counsel to jump back in and get up to speed on all that.").

Although Defendants have attempted to waive all conflicts stemming from joint representation – known and unknown – promising to waive such conflicts is significantly more digestible before a conviction has been handed down. Should Defendants be convicted, there is no guarantee they will not raise the issue of conflicted counsel as a basis to set aside their convictions. Conducting one trial, with counsel free of conflicts, is more consistent with the Sixth Amendment than a trial conducted with Defendants' preferred but significantly conflicted attorney, which could very well lay a foundation for substantial post-trial litigation attacking that representation.

The Court has not undertaken this inquiry lightly, and has given great weight to the Reese family's choice of counsel. However, the perils of joint representation in this case render it impossible for the Court to accept Defendants' waivers in light of its obligation to ensure the

effective advocacy guaranteed to every criminal defendant by the Sixth Amendment.

**THEREFORE,**

**IT IS ORDERED** that the law firm Bregman & Loman, P.C., currently counsel of record for defendant Rick Reese, is prohibited from substituting as counsel for the remaining members of the Reese family charged under the common Indictment.

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**