IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                              No. CR 11-2294 RB

**RICK REESE, TERRI REESE,**
**RYIN REESE, and REMINGTON REESE,**

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendants' Joint Motion for Hearing to Determine the Admissibility of Alleged Coconspirator Statements, (Doc. 174). A hearing was held on June 13, 2012. Having considered the evidence adduced at the hearing, the court record, arguments of counsel, and being otherwise fully advised, the Court finds the statements of Defendants discussed at the hearing are not hearsay within the meaning of Federal Rule of Evidence 801(d)(2)(E).

**I.    Background**

On August 24, 2011, Rick Reese, Terri Reese, Ryin Reese, and Remington Reese were charged by Indictment with conspiracy to make false statements in connection with the acquisition of firearms and smuggling goods from the United States, making false statements in connection with the acquisition of firearms, smuggling goods from the United States, and conspiracy to commit money laundering. Rick Reese and Terri Reese are the parents of Ryin Reese and Remington Reese. Rick Reese and Terri Reese owned and operated New Deal Shooting Sports, a federally licensed firearms store near Deming, New Mexico. Rick Reese, Terri Reese, Ryin Reese, and Remington Reese worked at the New Deal store. Defendants move

to exclude their statements recorded during undercover operations involving a cooperating individual named Jose Roman-Jurado.

## II.     Discussion

Rule 801(d)(2)(E) provides that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).  Coconspirator statements are admissible if the Court finds by a preponderance of the evidence that: (1) a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy.  *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995).  Statements by a conspirator are in furtherance of the conspiracy when they are "intended to promote the conspiratorial objectives." *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (quotation omitted).

The Tenth Circuit holds that a district court can only admit coconspirator statements if it holds a hearing, pursuant to *United States v. James*, 590 F.2d 575 (5th Cir. 1979), or conditions admission on forthcoming proof of a "predicate conspiracy through trial testimony or other evidence."  *Owens*, 70 F.3d at 1123.  The Tenth Circuit has repeatedly emphasized a "strong preference for *James* proceedings."  *United States v. Gonzalez-Montoya*, 161 F.3d 643, 648 (10th Cir. 1998); *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996); *Owens*, 70 F.3d at 1123.  The purpose of a *James* hearing is "to protect the defendant from the admission of prejudicial hearsay on the basis of threadbare evidence of conspiracy."  *United States v. Grassi*, 616 F.2d 1295 (5th Cir. 1980).

The government must prove the existence of a conspiracy by a preponderance of the evidence.  *See Bourjaily v. United States*, 483 U.S. 171, 176 (1987).  It bears underscoring that the

government may rely on, and the Court may consider, any non-privileged evidence, including both the challenged coconspirator statements and any hearsay evidence, regardless of the admissibility of such evidence at trial. *See Owens*, 70 F.3d at 1124. Additionally, the government may meet its burden through a summary witness. *See id.*

Consistent with the Tenth Circuit's preference, the Court held a *James* hearing on June 13, 2012. The United States called Immigration and Customs Enforcement Special Agent Eddie Pacheco as a summary witness. Government Exhibits 2-5 were admitted, including the Indictment; transcripts of undercover operations that occurred on April 20, 2011, May 19, 2011, May 27, 2011, June 15, 2011, July 7, 2011, and July 29, 2011; an entry from the diary of Rick Reese from August 25, 2010; and a Firearm Transaction Record from May 19, 2011.

Special Agent Pacheco testified that, in April 2010, Jose Roman-Jurado started to purchase firearms and ammunition from New Deal using Penny Torres as a straw purchaser. On August 25, 2010, Ryin Reese sold several AK47-type pistols to Mr. Roman-Jurado through Penny Torres. The same day, Rick Reese wrote in his diary that "Meskins [sic] in again & bought 6/7 AK pistols. So ATF will freak on that as well as local S.O. Too bad we've done a lot of business." (Govt. Ex. 4).

On August 28, 2010, Terri Reese telephoned Mr. Roman-Jurado and told him there was a problem with the "girl" (Penny Torres) he had brought to purchase firearms. Mr. Roman-Jurado then sent Ms. Torres to meet with Terri Reese at the New Deal store. Ms. Reese showed Ms. Torres a fax from the National Tracing Center stating that a firearm sold by New Deal to Ms. Torres had been recovered in Mexico. Ms. Reese warned Ms. Torres that, if Ms. Torres told anyone that Ms. Reese had shown Ms. Torres the fax, Ms. Reese would deny it. Additionally, Ms. Reese advised Ms. Torres not to telephone New Deal because the phones were possibly tapped.

On August 30, 2010, Terri Reese reported to Luna County Sheriff Investigator Allen Batts

that Ms. Reese had received notice from the National Tracing Center that a firearm sold by New Deal to Penny Torres had been recovered in Mexico. Ms. Reese informed Deputy Batts that Ms. Torres had purchased twenty-three firearms from New Deal over a four-month period. Deputy Batts relayed this information to the ATF Office in Deming. ATF began an investigation of Penny Torres.

In November 2010, Rick Reese showed Mr. Roman-Jurado a .50 caliber firearm in the New Deal store and stated: "Hey you should get one of these. This can shoot really far. You can take this gun up to a mountain and shoot at people in Mexico." Mr. Roman-Jurado purchased over $1,000 of ammunition from New Deal in November 2010.

In mid-December 2010, federal law enforcement agents approached Penny Torres and she agreed to give an interview. During this interview, Ms. Torres admitted her involvement with Jose Roman-Jurado in transporting marijuana and also purchasing guns for Mr. Roman-Jurado. Additionally, Ms. Torres described her actions as a straw purchaser of firearms from New Deal for Mr. Roman-Jurado and her August 28, 2010 meeting with Terri Reese.

On January 21, 2011, Jose Roman-Jurado was arrested by federal law enforcement agents. On January 24, 2011, Jose Roman-Jurado and his wife, Yadira Corral de Roman, were charged with conspiracy to possess with intent to distribute marijuana, making false statements to a federal firearms dealer, and aiding and abetting. *See United States v. Jose Roman-Jurado and Yadira Corral de Roman,* CR11-0920 JP.

During the last week of January or the first week of February 2011, federal law enforcement agents debriefed Mr. Roman-Jurado. Mr. Roman-Jurado related that he began buying firearms from New Deal for a Mexican drug cartel in March or April 2010. Mr. Roman used Ms. Torres as a straw purchaser to purchase firearms from New Deal. Mr. Roman-Jurado stated that Ryin Reese was aware that Mr. Roman-Jurado used a straw purchaser and Mr. Roman-Jurado intended to transport

the firearms and ammunition to Mexico.

After Mr. Roman-Jurado agreed to cooperate, federal law enforcement agents sent Mr. Roman into the New Deal store with federal undercover agents on six occasions beginning on April 20, 2011. On these six occasions, Mr. Roman and the undercover agents wore concealed recording devices and recorded conversations with Defendants. During the undercover operations, Mr. Roman negotiated with the Defendants and the undercover agents purchased firearms and ammunition from Defendants.

On April 20, 2011, Mr. Roman-Jurado and an undercover agent went into the New Deal store with audio recording devices and discussed the purchase of assault firearms with Remington Reese. Terri Reese was present. Mr. Roman-Jurado negotiated and the undercover agent purchased 1,000 rounds of .223 caliber ammunition and 1,000 rounds of 7.62 mm ammunition from Remington Reese. Remington Reese stated he did not know how to convert a semi-automatic to automatic. Remington Reese removed the ammunition from its original packaging and repackaged it in black canvas bags to evade detection. Mr. Roman-Jurado indicated that he planned to take the ammunition to Mexico. Remington Reese was recorded making comments indicating that he believed that the ammunition would be exported to Mexico and he knew his conduct was illegal.

Mr. Roman-Jurado and undercover agents purchased firearms and ammunition from New Deal on five further separate occasions: May 19, 2011; May 27, 2011; June 15, 2011; July 7, 2011; and July 29, 2011. Each transaction was recorded.

On August 24, 2011, Defendants were charged by Indictment with conspiracy, making false statements in connection with the acquisition of firearms, smuggling goods from the United States, and money laundering conspiracy. The Indictment includes forfeiture allegations.

On January 23, 2012, Penny Torres was charged with conspiracy to possess with intent to

distribute marijuana, making false statements to a federal firearms dealer, and aiding and abetting. *See United States v. Penny Torres*, 12cr0121 RB.

In total, between March 2010, and August 2011, on eleven to fifteen instances, Mr. Roman-Jurado went into the New Deal store and negotiated purchases of firearms and ammunition. Four or five other persons were involved in, and in some instances signed the Forms 4473 for the purchases, but Mr. Roman negotiated all the deals with one or more of the Defendants.

The Court finds by a preponderance of the evidence that the government has established, for purposes of the *James* hearing, that all four Defendants were involved in the conspiracy to make false statements in connection with the acquisition of firearms and smuggling goods from the United States. The Court finds that the government has established by a preponderance of the evidence that (1) a conspiracy existed amongst the Defendants; (2) all four Defendants were members of the conspiracy; and (3) the statements presented at the *James* hearing were made in the course of and in furtherance of the conspiracy. Therefore, the statements of Rick Reese, Terri Reese, Ryin Reese, and Remington Reese presented at the *James* hearing are not hearsay within the meaning of Federal Rule of Evidence 801(d)(2)(E).

In that there are two separate types of conspiracies alleged and given that the government, at the *James* hearing, put on little evidence related to the money laundering conspiracies, the government is cautioned that, pending further factual development, the cover of Rule 801(d)(2)(E) is not available for statements relating to those conspiracies.

**IT IS SO ORDERED**.

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**