**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**vs.**                                                          **No. CR 11-2294 RB**

**RICK REESE, TERRI REESE,**
**RYIN REESE, and REMINGTON REESE,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on TERRI REESE'S MOTION IN LIMINE I: TO

REDACT SURVEILLANCE RECORDINGS (OR TRANSCRIPTS OR TRANSLATIONS

THEREOF) TO EXCLUDE EVERYTHING IN SPANISH SPOKEN IN FRONT OF ANY

DEFENDANTS (Doc. No. 230) (Motion) filed on June 11, 2012.[1]  Defendants Rick Reese, Ryin

Reese and Remington Reese (together Defendants) have joined the Motion.  A hearing was held

on July 12, 2012.  Having considered the evidence adduced at the hearing, the submissions of

counsel, court record, arguments of counsel, and being otherwise fully advised, the Court will

grant the Motion in part and will deny the Motion in part.

      Defendants move to exclude, redact, or edit portions of recordings and written transcripts

---

[1] The Court has also carefully reviewed UNITED STATES' RESPONSE TO
DEFENDANT TERRI REESE'S MOTION IN LIMINE I: TO REDACT SURVEILLANCE
RECORDINGS (OR TRANSCRIPTS OR TRANSLATIONS THEREOF) TO EXCLUDE
EVERYTHING IN SPANISH SPOKEN IN FRONT OF ANY DEFENDANTS (Doc. No. 230)
(Doc. No. 248) and  TERRI REESE'S REPLY TO USA RESPONSE (DOC 248) RE HER
MOTION IN LIMINE TO REDACT SURVEILLANCE RECORDINGS (OR TRANSCRIPTS
OR TRANSLATIONS THEREOF) TO EXCLUDE EVERYTHING IN SPANISH SPOKEN IN
FRONT OF ANY DEFENDANTS (Doc. No. 230) (Doc. No. 259).

made by the United States in its investigation of New Deal Shooting Sports (New Deal), a gun shop located in Deming, New Mexico.  Specifically, Defendants move to exclude all Spanish statements from both the recordings and written transcripts of conversations spoken in front of one or more Defendants during several "undercover" purchases between Defendants and confidential informants and undercover agents posing as buyers.  In Terri Reese's affidavit attached to the Motion, she testified that neither she nor the other Defendants speak or understand Spanish. (Mot. Ex. 1 Terri Reese Aff. ¶ 2).  Defendants point out 47 Spanish statements made in front of one or more of the Defendants that they contend should be excluded or altered because they are irrelevant under Fed. R. Evid 401 or because they are unfairly prejudicial under Fed. R. Evid. 403.  However, Defendants assert that they are not moving to exclude the Spanish conversations "between the federal agents and the criminals who were 'working off' other charges by posing as 'straw purchasers.'" (*Id.* at 1.)

In its Response to the Motion (Doc. No. 251), the United States does not dispute the Defendants' claim that they cannot speak or understand Spanish; therefore, the content of the statements is irrelevant to show Defendants' specific knowledge of what was said.  However, the United States contends that the Spanish statements are relevant to show that Defendants knew "the items purchased were going to Mexico," which is vital proof of the crimes with which Defendants are charged. (Response at 2).

I.  Background

Defendant Rick Reese owned and operated New Deal, a firearms dealership in Deming, New Mexico.  Rick Reese's wife, Terri Reese, and sons, Ryin and Remington Reese, were employed by New Deal.  New Deal was authorized to sell firearms and ammunition as a Federal Firearms Licensee (FFL) under 18 U.S.C. § 923.  *See generally,* 18 U.S.C. §§ 922-931 (Ch. 44,

2

Firearms).  On August 24, 2011, Defendants were charged by Indictment with 1) conspiracy to

make false statements in connection with acquisition of firearms and conspiracy to smuggle

goods from the United States (Count 1) in violation of 18 U.S.C. § 924(a)(1)(A)[2] and 18 U.S.C.

§ 554[3]; 2) knowingly making false statements on Bureau of Alcohol, Tobacco, Firearms, and

Explosives (ATF) Form 4473[4] in connection with purchases of firearms and ammunition by

persons that the Defendants knew were not the actual purchasers of the firearms and ammunition

(Counts 2-10) in violation of 18 U.S.C. § 924(a)(1)(A); 3) knowingly exporting or attempting to

export firearms and ammunition out of the United States (Counts 11-28) in violation of 18

U.S.C. § 554; and 4) conspiracy to commit money laundering in violation of 18 U.S.C. §§

---

[2] Section 924(a)(1)(A) provides:
　　　　　(a)(1) . . . [W]hoever–
　　　　　　　　(A) knowingly makes any false statement or representation with respect to
　　　　　　　　the information required by this chapter to be kept in the records of a
　　　　　　　　person licensed under this chapter . . .
　　　　shall be fined . . . [or] imprisoned not more than five years, or both.

18 U.S.C. § 924(a)(1)(A).

[3] Section 554 provides:
Whoever fraudulently or knowingly exports or . . . facilitates the transportation,
concealment, or sale of such merchandise, article or object, prior to exportation, knowing
the same to be intended for exportation contrary to any law or regulation of the United
States, shall be fined under this title, imprisoned not more than 10 years, or both.

18 U.S.C. § 554(a).

[4] When purchasing a firearm from an FFL, a buyer must fill out a Form 4473, which
requires, among other things, the buyer's true name and address. *See* 27 C.F.R. § 478.124
(requiring Form 4473 for every firearms purchase). FFLs are required to keep these forms in
their records. Form 4473 specifically warns the purchaser: If you are not the actual buyer, the
dealer cannot transfer the firearm(s) to you . . . ." The purpose of the Form 4473 is "to record
identifying information about gun purchasers and the firearms they purchase, which allows
firearms to be traced and prevents transfer to persons prohibited from possessing firearms."
*Article II Gun Shop v. Gonzales*, 441 F.3d 492, 494 (7th Cir. 2006), *cert. denied*, 549 U.S. 995
(2006).

3

1956(a) and (h) (Counts 29 and 30).[5]

The investigation of the New Deal store began in 2010 and led to Defendants' arrest on August 30, 2012. Investigators used confidential informants (CIs) and undercover agents (UCs) to purchase guns and ammunition on several occasions from one or more of the Defendants. During those purchases, the transactions were recorded in audio and video. In the audio recordings and in the written transcripts prepared from the recordings, the CIs and UCs spoke in Spanish to each other in front of the Defendants while negotiating for the purchase of firearms and ammunition. Defendants seek to exclude these Spanish statements from both the recordings and the written transcripts.

II. Legal Standards

Only relevant evidence is admissible at trial. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. However, the Court may exclude relevant evidence, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Under Rule 403, "evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Garcia*, 635 F.3d 472, 477-78 (10th Cir. 2011) (quoting *United States v. Tan*, 254 F.3d 1204, 1211–12 (10th Cir. 2001)). Even if unfair "prejudice is found, it

---

[5] Section 1956 makes it a crime to knowingly conduct a financial transaction which involves the proceeds of unlawful activity. *See* 18 U.S.C. § 1956 (a) and (h).

must substantially outweigh the probative value of the evidence in order to be excluded." *Id.* (quoting *Tan*). Defendants ask the Court to the Spanish statements as irrelevant under Fed. R. Evid 401 and 402 or as unduly prejudicial under Fed. R. Evid. 403. However, Defendants assert that they are not moving to exclude the Spanish conversations "between the federal agents and the criminals who were 'working off' other charges by posing as 'straw purchasers.'" (Motion at 1.)

III.  Discussion

A.  Relevance

The United States contends that even though the Defendants did not understand those statements, the Spanish statements spoken in front of the Defendants are relevant, not for their content, but to show that the Defendants knew or had reason to know that the guns were "going to Mexico." The Defendants counter that it is not enough to show that Defendants knew that the guns were "going to Mexico," but the United States must prove the Defendants knew the guns were going to be illegally smuggled to Mexico "to commit crimes." (Reply at 1). The Defendants implicitly argue that the Spanish statements would be relevant to show the Defendants knew weapons would be smuggled into Mexico to commit crimes only if Defendants could understand Spanish. The Defendants essentially argue that since they did not understand the Spanish statements, the statements are irrelevant to show any kind of knowledge on their part.

The Court disagrees. The Spanish conversations are relevant to give a context for each transaction, and those conversations are particularly relevant with respect to the crimes charged in Counts 11-28. In those counts, the Defendants are charged with violating 18 U.S.C. § 554, which makes it a crime to facilitate the transportation, concealment, or sale of merchandise,

knowing it is intended for illegal exportation.  *Id.*  Exporting weapons and ammunition to

Mexico is a violation of federal law.  *See* 22 U.S.C. § 2778(b)(2) (prohibiting export of

munitions without a license).  If the United States proves that the Defendants knew that the guns

and ammunition sold to the CIs and UCs were "going to Mexico," this knowledge could satisfy

one element required for a conviction under § 554.  The Defendants' lack of understanding of

those Spanish conversations goes to the weight, not the relevance, of the evidence.

   B.  Unfair Prejudice

  Next the Court must consider whether the Spanish conversations, even if relevant, should

be excluded because their probative value is substantially outweighed by the danger of "unfair

prejudice, confusion of the issues, or misleading the jury[.]" Fed. R. Evid. 403.  Evidence is

unfairly prejudicial if it provokes an emotional response in the jury or otherwise tends to affect

adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt

or innocence of the crime charged. *United States v. Tan*, 254 F.3d at 1212.

  Defendants contend that the Spanish conversations have minimal probative value.  First,

Spanish is common in this part of the country, and Defendants do a lot of business with Spanish-

speaking clients by using interpreters.  Defendants maintain that New Deal has often sold

merchandise to Spanish speakers who have a valid New Mexico ID, who correctly fill out the

ATF Form 4473, and who pass a background check.  Defendants further argue that the Spanish

conversations between the CI and the UC will "distract" the jury from what is transpiring

between the Defendants and the CI and UC.  In their Reply, the Defendants assert that if the

United States is only seeking to admit the statements only to prove that Spanish was spoken in

front of the Defendants, then there is no need to include the actual Spanish statements or the

English translations.  As an alternative to a complete redaction, the Defendants suggest that the

Court replace the Spanish statements with something like, "Spanish language spoken here which the Reeses did not understand." (Reply at 3.)

The Court declines to follow the Defendants' suggestion and finds that the jury should hear the actual conversations as they occurred.  The audio version of the Spanish conversations provide important information from which the jury can determine what the Defendants knew about each particular "buyer" and his or her companion.  However, since the United States is offering the Spanish statements not for their content, the Spanish written in the transcripts of the recordings is not relevant.  Thus, the Court will require the United States to redact all Spanish from the written transcripts.  However, the Court will not allow the redaction of the English translations.  Neither will the Court redact the Spanish statements and replace them with an indication such as, "[Spanish spoken here]."  It is possible that one or more jurors in this case will be able to understand Spanish.  A juror who can understand Spanish might become an expert interpreter for the other non-Spanish-speaking jurors.  In *United States v. Rivera*, the Tenth Circuit Court of Appeals upheld the admission of recordings of Spanish conversations between defendant and undercover agent.  On appeal, the defendant argued that one juror was fluent in Spanish could have become an "expert" whose interpretation of the conversation was given undue weight.  The Tenth Circuit Court of Appeals rejected this argument noting that the jurors also had an English translation and did not have to rely on the Spanish-speaking juror:

> It is true . . . that the Spanish-speaking juror had the unique advantage of understanding the conversations in Spanish and the opportunity to relay and interpret the discussions to the jurors during their deliberation. However, with each juror having access to the transcripts, we are not persuaded that any prejudice should be presumed.

778 F.2d 591, 600 (10th Cir. 1985).  The Tenth Circuit upheld the conviction noting that the defendant was merely speculating that the jury used the interpreter as an expert.

In this case, the Court will allow the jury to hear the audio of the Spanish conversations, but the Court will redact the written Spanish in the transcripts because the actual content of the conversations is irrelevant.  However, to avoid having the jury seek out an interpretation from one of their own, the Court will not redact the written English translation of those conversations. The exclusion of all Spanish statements between the CI and UC and the replacement of those conversations with [Spanish spoken here], however, goes too far and would leave a large gap in the transcripts that would not exist in the audio recordings.  Thus, the Court will not completely redact the transcripts of the Spanish conversations.  Instead, the Court will allow only the written English translation to appear in the written transcript.

In sum, the jury should be allowed to hear the Spanish conversations between the CIs and the UCs in front of the Defendants.  This evidence is relevant to whether the Defendants knew that the weapons and ammunition were going to be smuggled into Mexico, and the jury needs a complete picture of what transpired at the New Deal shop between the Defendants, the CI and the CU.  However, the Court will require the United States to redact the Spanish from the written transcripts but the United States must leave in the English translations in the written transcripts. To minimize any prejudice to Defendants from the audio and written evidence, the Court asks the parties to submit proposed limiting instructions to be given to the jury during trial and after trial.  The instructions should tell the jury not to consider the content of the Spanish conversations as evidence of the Defendants knowledge of what was said.

IT IS ORDERED that  TERRI REESE'S MOTION IN LIMINE I: TO REDACT SURVEILLANCE RECORDINGS (OR TRANSCRIPTS OR TRANSLATIONS THEREOF) TO EXCLUDE EVERYTHING IN SPANISH SPOKEN IN FRONT OF ANY DEFENDANTS (Doc. No. 230) is granted in part and denied in part as follows:

8

1.   The United States will redact all Spanish statements from the written transcripts of the surveillance recordings.

2.   The United States may present the recordings of all Spanish statements and conversations conducted in front of the Defendants.

3.   The parties will submit proposed instructions to be read to the jury during trial and after trial indicating that the jury must not consider the content of the recordings of Spanish conversations and that the jury may only consider the fact that the Spanish statements were made.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE