IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

vs.                                                            No. CR 11-2294 RB

**RICK REESE, TERRI REESE,**
**RYIN REESE, and REMINGTON REESE,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Terri Reese's Motion to Strike United States' Expert Testimony of Paul Hagerty and Request for Daubert Hearing, (Doc. 245), filed on June 19, 2012. The Court heard oral argument on this Motion on July 12, 2012. Having considered the arguments of counsel, record, relevant law, and being otherwise fully advised, the Court denies this Motion.

Defendant Terri Reese moves to exclude the testimony of the United States' expert witness, Paul Hagerty, on the grounds that such testimony is neither reliable nor relevant, and the risk of unfair prejudice substantially outweighs the testimony's probative value. Terri Reese requests a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The United States responds that the Court should deny the motion and the request for hearing.

On May 4, 2010, the United States filed its Notice of Expert Witnesses Testimony describing Paul Hagerty as an ATF Senior Special Agent (SSA) with more than twenty years of investigative experience and that SSA Hagerty would testify as an expert "consistent with paragraphs one through fourteen in the Indictment's Introduction." (Doc. 182). Paragraphs one through fourteen in the Indictment's Introduction state:

1. Transnational Criminal Organizations operating in Mexico, oftentimes referred to as Mexican Cartels, rely upon the use of firearms and ammunition to protect their supply of drugs, supply routes, profits, and distribution territory from both law enforcement agents and competing Cartels.

2. Mexican Cartels represent a ready and lucrative market for firearms and ammunition from the United States. Mexican Cartels prefer certain makes, models, and calibers of firearms. These "weapons of choice" are generally semi-automatic versions of military type rifles and pistols. They include .50 caliber rifles (which use .50 caliber ammunition), AK-47 type rifles and pistols (which use 7.62mm ammunition), AR-15 rifles (which use 5.56mm and .223 caliber ammunition), 9mm pistols (which use 9mm ammunition), and other high-powered handguns.

3. Mexican Cartels desire .50 caliber rifles because they are capable of shooting a target from at least 1,000 meters away, and can shoot through a brick wall or penetrate the engine block of a vehicle. Mexican Cartels desire AK-47 type rifles and pistols because they are: (1) capable of accepting high-capacity magazines; (2) rugged and durable in extreme conditions such as deserts and jungles; and (3) easily convertible to fully-automatic mode, meaning the firearm will continue to load and fire rounds of ammunition as long as the trigger is activated or until the firearm runs out of ammunition.

4. These firearms, and the ammunition that they use, are not available in Mexico through regular commercial retail channels, but are available in the United States through licensed retail gun shops. Therefore, Mexican Cartels rely on the commercial firearms market from the United States, among other places, to supply their para-military wings and enforcers. Firearms traffickers commonly purchase the firearms and ammunition they smuggle into Mexico from licensed retail gun shops in the United States. Because of their unavailability in Mexico, these firearms and ammunition are worth significantly more in Mexico than in the United States.

5. A Federal Firearms Licensee ("FFL") is a business licensed under Chapter 44 of Title 18, United States Code, to engage in the business of dealing in firearms. When a purchaser buys a firearm from an FFL, that buyer must fill out a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Form 4473 (Firearms Transaction Record), which asks for and requires the buyer's true name, current residential address, and other identifying information. The information on the ATF Form 4473 makes it possible to trace a firearm back to its retail purchaser. FFLs are required by Chapter 44 of Title 18, United State Code, to maintain these forms in their records.

6. In addition, ATF Form 4473 asks the purchaser: "Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you

are not the actual buyer, the dealer cannot transfer the firearm(s) to you . . . ."

7. If an FFL or employee of an FFL knows that the individual filling out an ATF Form 4473 is not the actual purchaser of the firearm(s), but is instead purchasing the firearm(s) on behalf of another person, it is illegal for the FFL or an employee to sell the firearm(s) to that individual.

8. Firearms traffickers often employ "straw purchasers" to buy firearms from licensed gun dealers in the United States. These straw purchasers are commonly paid to falsely claim on the ATF Form 4473 that they are buying the firearm(s) for themselves, when in fact they are purchasing the firearm(s) on behalf of another.

9. Firearms traffickers commonly acquire firearms through straw purchasers to conceal the true purchaser. Firearms purchased in furtherance of a firearms trafficking conspiracy are usually purchased in cash to further conceal the true buyer and source of funds.

10. Firearms traffickers commonly employ multiple straw purchasers to supply them with their firearms, ensuring that they have more than one source of firearms for distribution to their buyers. Firearms traffickers also employ multiple straw purchasers to avoid detection by law enforcement because multiple people purchasing smaller amounts of firearms arouse less suspicion than one person purchasing a large amount of firearms.

11. At all times relevant to this Indictment, Old Ironsides, LLC, doing business as New Deal Shooting Sports (hereafter called "New Deal") in Deming, New Mexico, was an FFL, a business licensed under the provisions of Chapter 44 of Title 18, United States Code, to deal in firearms. At all times relevant to this Indictment, Defendant **RICK REESE** owned New Deal.

12. At all times relevant to this Indictment, Defendants **RICK REESE**, **TERRI REESE**, **RYIN REESE**, and **REMINGTON REESE**, worked at New Deal selling firearms, ammunition, and other supplies.

13. Only those individuals possessing an export license from either the United States Department of State or the United States Department of Commerce may legally export certain firearms and ammunition from the United States, including AK-47 type rifles and pistols, .50 caliber rifles, AR-15 rifles, 9mm handguns, and ammunition including .50 caliber, .223 caliber, 7.62mm, 9mm, and 5.56mm.

14. At all times relevant to this Indictment, Defendants **RICK REESE**, **TERRI REESE**, **RYIN REESE**, and **REMINGTON REESE**, did not have, and have never had, an export license from either the United States Department of State

or the United States Department of Commerce.

(Doc. 2).

Rule 702 governs the admission of expert testimony and provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court has held that district courts must perform a gatekeeping role to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. Although *Daubert* prescribes certain factors[1] to apply in determining the reliability of scientific or technical expert testimony, the Court has the discretion to determine the applicability of the *Daubert* factors where, as in this case, the testimony is not purely scientific. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). In such a case, the *Daubert* factors should be considered only to the extent they are relevant to the subject of the testimony. *Id*. If the Court determines the witness is qualified and his opinion is reliable, the Court must then determine whether the proffered testimony is relevant and will assist the jury in its determination of the facts. *See, e.g., Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002).

The Court has discretion to determine whether a hearing is necessary when the admissibility of expert testimony is challenged. *Kumho Tire Co.*, 526 U.S. at 152; *United States v. Charley*, 189

---

[1] *Daubert* holds that, when evaluating the admissibility of technical or scientific expert testimony, the trial court should consider: (1) whether the theory or technique used by the expert can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the technique or method; and (4) whether the theory or technique has obtained general acceptance within the scientific community. *Daubert*, 509 U.S. at 593-94.

F.3d 1251, 1266 (10th Cir. 1999). The district court may satisfy its gatekeeping function "when asked to rule on a motion in limine, on an objection during trial, or on a post-trial motion so long as the court has sufficient evidence to perform 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.' " *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). Under the circumstances of this case, a hearing is not required to determine the admissibility of SSA Hagerty's expert testimony.

A law enforcement officer's testimony satisfies the *Daubert* reliability requirement if the officer is qualified by training and experience to offer an opinion. *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009) (explaining how the Tenth Circuit has repeatedly permitted police officers to testify as experts on the drug trade). The specialized knowledge required for reliability can be "acquired through 'experience' and 'training.'" *Garza*, 566 F.3d at 1199 (quoting Fed. R. Evid. 702). The Tenth Circuit has stated that "police officers can acquire specialized knowledge of criminal practices and thus the expertise to opine on such matters," on a variety of topics. *Id.* The Tenth Circuit has "consistently found that the reliability of officer testimony can be 'safely inferred from the breadth of [the] individual's training and experience.' " *United States v. Pulido*, 2011 WL 386977, at *12 (N. D. Okla. Feb. 3, 2011) (unpublished opinion) (*quoting United States v. Diaz*, 356 F. App'x 117, 126–27 (10th Cir. 2007) (unpublished opinion) and *Garza*, 566 F.3d at 1199). As the proposed testimony of SSA Hagerty is based on his twenty-plus years of experience and extensive training, his testimony is sufficiently reliable for purposes of Rule 702.

The next question is whether SSA Hagerty's proposed testimony is relevant to the issues at hand. In order to be relevant, expert testimony must "logically advance[ ] a material aspect of the case," *Norris*, 397 F.3d at 884 n. 2, and be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute," *Daubert*, 509 U.S. at 591 (quotation omitted). In assessing

whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony "is within the juror's common knowledge and experience," and "whether it will usurp the juror's role of evaluating a witness's credibility." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006) (footnote omitted). In making this assessment, the Court must conduct a "common-sense inquiry" into whether a juror would be able to understand certain evidence without specialized knowledge. *United States v. Becker*, 230 F.3d 1224, 1231 (10th Cir. 2000).

The Tenth Circuit recently held that expert testimony from an ATF agent regarding straw purchasers was relevant, and the probative value of the expert's testimony was not substantially outweighed by danger of unfair prejudice. *United States v. Garcia*, 635 F.3d 472, 476-78 (10th Cir. 2011) (quotation omitted) (affirming admission of a ATF agent's testimony about straw buyers, why the actual purchaser would use a straw buyer, and that firearms laws in Mexico are more restrictive than those in the United States). At the hearing of July 12, 2012, counsel for Terri Reese relied on *Garcia* for the proposition that the Court should not allow SSA Hagerty to testify about Mexican drug cartels. In *Garcia*, the Honorable M. Christina Armijo, the trial judge in *Garcia*, limited the scope of the expert's testimony and did not permit him to describe Mexican drug cartels. *Garcia*, 635 F.3d at 474. Defendant suggests that Mr. Hagerty's testimony should be similarly limited. However, the Tenth Circuit did not hold that the expert testimony should be so limited; rather it held that there was no abuse of discretion in allowing the expert testimony. Judge Armijo limited the scope of the testimony based on the facts in *Garcia*, which materially differ from the facts herein. In *Garcia*, the defendant was charged with knowingly making false statements to a federally licensed firearms dealer; she was not charged with conspiracy. *Garcia*, 635 F.3d at 474; *United States v. Garcia*, CR 09-2740 MCA, Doc. 74 at 7-8 (Dec. 15, 2009). In the instant case, Defendants are

6

charged with conspiracy, smuggling, and conspiracy to commit money laundering. *Id.* Additionally, in *Garcia* there was no direct evidence associating the defendant with Mexican drug cartels. *Garcia*, CR 09-2740 MCA, Doc. 74 at 7-8. In this case, the United States intends to present direct evidence that the cooperating witness was closely associated with Defendants and he worked for a Mexican drug cartel. Thus, the considerations that led Judge Armijo to limit the scope of the expert testimony in *Garcia* are not present in this case, so long as the United States presents direct evidence associating Defendants with a Mexican drug cartel. Thus, before presenting the expert testimony of Mr. Hagerty on the topic of Mexican drug cartels, the United States must request approval at sidebar.

As the operational practices and preferences of Mexican drug cartels and the international trafficking of firearms is beyond the common experience of most jurors, the testimony of SSA Hagerty will provide background information and context for the government's case. The proffered testimony is sufficiently tied to the issues of the case and will assist the jury in its determination of the facts. Additionally, the probative value of the proposed testimony is not substantially outweighed by the danger of unfair prejudice. Thus, the proposed testimony of SSA Hagerty is admissible as discussed herein. Defendant Terri Reese's Motion to Strike United States' Expert Testimony of Paul Hagerty and Request for Daubert Hearing is denied, subject to the proviso that the United States must request approval at sidebar before it presents the expert testimony of Mr. Hagerty on the topic of Mexican drug cartels.

**IT IS SO ORDERED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**