**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

      Plaintiff,

vs.                                                             **No. CR 11-2294 RB**

**RICK REESE, TERRI REESE,**
**RYIN REESE, and REMINGTON REESE,**

      Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the court on the UNITED STATES' MOTION IN LIMINE TO EXCLUDE NON-RELEVANT EVIDENCE OF OTHER UNRELATED INVESTIGATIONS (Doc. No. 234) (Motion) filed on June 11, 2012.[1] A hearing was held on July 12, 2012. Having considered the evidence adduced at the hearing, the submissions of counsel, the court record, arguments of counsel, and being otherwise fully advised, the Court will grant the Motion.

**I. Legal Standard**

Only relevant evidence is admissible at trial. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. However, the Court may exclude relevant evidence, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue

---

[1] The Court also carefully reviewed DEFENDANT REMINGTON REESE'S RESPONSE TO THE UNITED STATES' MOTION IN LIMINE TO EXCLUDE NON-RELEVANT EVIDENCE OF OTHER UNRELATED INVESTIGATIONS (Doc. No. 251) and TERRI REESE'S RESPONSE TO USA MOTION (234) TO EXCLUDE NON-RELEVANT EVIDENCE OF UNRELATED INVESTIGATIONS (FAST & FURIOUS) (Doc. No. 252).

delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Any party, including the party that calls a witness, may attack a witness's credibility. Fed. R. Evid. 607. However, ". . . extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness[.] Fed. R. Evid. 608(b).

## II. Background

Defendant Rick Reese owned and operated New Deal Shooting Sports (New Deal), a firearms dealership in Deming, New Mexico. Rick Reese's wife, Terri Reese, and sons, Ryin and Remington Reese, were employed by New Deal. New Deal was authorized to sell firearms and ammunition as a Federal Firearms Licensee (FFL) under 18 U.S.C. § 923. *See generally,* 18 U.S.C. §§ 922-931 (Ch. 44, Firearms).

On August 24, 2011, Rick Reese, Terri Reese, Ryin Reese, and Remington Reese were charged by Indictment with several crimes: 1) conspiracy to make false statements in connection with acquisition of firearms and conspiracy to smuggle goods from the United States in violation of 18 U.S.C. § 924(a)(1)(A) and 18 U.S.C. § 554; 2) knowingly making false statements on Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Form 4473 in connection with purchases of firearms and ammunition by persons that the Defendants knew were not the actual purchasers of the firearms and ammunition in violation of 18 U.S.C. § 924(a)(1)(A); 3) knowingly exporting or attempting to export firearms and ammunition out of the United States in violation of 18 U.S.C. § 554; and 4) conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a) and (h).

The events leading up to the Indictment began in August 2010 when Defendant Terri Reese reported to Luna County Sheriff Investigator Allen Batts that Ms. Reese had received notice from the National Tracing Center that a firearm sold by New Deal to Penny Torres (Torres) had been recovered in Mexico. Ms. Reese informed Deputy Batts that Torres had purchased twenty-three firearms from New Deal over the previous four-month period. Deputy Batts passed this information along to the ATF office in Deming, New Mexico, and Homeland Security Investigations (HSI) placed Torres under daily surveillance and obtained her phone and financial records. The ATF entered Torres' information into the NCIS system so that the ATF would be notified if Torres attempted to purchase firearms in the future. The purpose of the Torres investigation was to determine whether Torres was acting as a straw purchaser, and if so, the identity of the person for whom she was purchasing firearms. However, Torres did not purchase any firearms after August of 2010. The ATF also entered information on every firearm that Torres previously purchased at New Deal into the ATF's suspect gun program. If one of those firearms was discovered, the case agent, ATF Special Agent Carlos Valles, would be notified. To date, six of the twenty-three firearms, purchased by Penny Torres at New Deal, have been recovered in Mexico.

In December 2010, federal law enforcement approached Torres, and Torres agreed to give an interview. During the interview, Torres admitted that she was involved in transporting marijuana and purchasing guns with Jose Roman-Jurado (Roman).

On January 21, 2011, Roman was arrested by federal law enforcement agents, and Roman informed the agents that the Reese's were aware of his intention to smuggle firearms purchased at New Deal into Mexico. On January 24, 2011, Roman and his wife, Yadira Corral de Roman, were charged with conspiracy to possess with intent to distribute marijuana, making

false statements to a federal firearms dealer, and aiding and abetting. *United States v. Jose Roman-Jurado and Yadira Corral de Roman,* Case No. 11 CR 920 JAP. Roman agreed to cooperate with the United States, and in February 2011, the investigation of New Deal was opened. From April 20, 2011 to July 29, 2011, Roman and undercover agents purchased firearms and ammunition from New Deal on six separate occasions. The transactions were recorded by audio and video.

At the hearing on July 12, 2012, ATF Special Agent Valles (SA Valles) testified that during the entire investigation that began in August 2010 and continued through July 2011, he did not have any contact with Special Agent in Charge (SAC) William Newell of the Phoenix Division of ATF, which is the office implicated in the Arizona investigation known as "Fast and Furious" (FAF). The record shows that FAF started in late 2009, and was shut down in late January 2011. SA Valles also testified that there were no FAF operations in New Mexico. From the testimony presented at the hearing, the Court finds that this investigation of New Deal was not related to FAF, and the New Deal investigation grew out of the August 30, 2010 tip from Terri Reese to the Luna County Sheriff's Department that a gun purchased at New Deal by Torres was found in Mexico. The investigation initially focused on Torres, which led to Roman. SA Valles testified that he did not need to contact his superiors in the Phoenix Division of ATF to open the investigation into New Deal, and that he did not at any time consult with that office during the New Deal investigation.

**III. Discussion**

In the Motion, the United States asks the Court to instruct Defendants and their counsel not to mention or refer in any manner other firearms investigations, especially FAF, during the trial in this case. The United States contends that the investigation of New Deal and the

Defendants was a stand-alone investigation wholly unrelated to FAF. According to the United States, not only is FAF irrelevant to this case, but if Defendants are allowed to mention and attempt to link FAF to this investigation, the jury will be confused and misled.

Defendant Remington Reese responds that the United States opened the door to let in evidence of FAF when the United States accused Defendants of contributing to the violence in Mexico. In the Indictment, the United States asserts that "Mexican Cartels represent a ready and lucrative market for firearms and ammunition from the United States." *See* Indictment (Doc. No. 1) at ¶ 1. In addition, the United States alleged ". . . Mexican Cartels rely on the commercial firearms market from the United States, among other places, to supply their para-military wings and enforcers. Firearms traffickers commonly purchase the firearms and ammunition they smuggle into Mexico from licensed retail gun shops in the United States." *Id.* ¶ 4. And the United States linked the Defendants to the Mexican market for illicit firearms, "[t]he Defendants sold . . . the types of firearms and ammunition for which there was a ready market among the Mexican Cartels." *Id.* at 5, ¶ 3.

Remington Reese contends that since the United States intends to characterize Defendants' actions as contributing to Mexican drug cartel violence for the purpose of inflaming the jury's emotional response to the charges, the Court should also allow Defendants to mention FAF to counter those accusations. Defendants maintain that, in the interest of fairness, they should be able to mention the FAF investigation, in which Defendants contend the United States also contributed to the violence in Mexico by allowing guns to be smuggled into Mexico. However, Defendants have presented no credible proof that the investigation of New Deal was associated, in any way, with FAF. And by mentioning FAF, Defendants will add to the risk that the jury will act on emotions and ignore the actual evidence presented at trial.

Remington Reese further argues, without citing any evidence, that even if this investigation was not a direct part of FAF, the investigation into New Deal was politically motivated to cover up or distract from the botched FAF program. According to Remington Reese, this motivation directly bears on the credibility of agents who will testify at trial regarding the investigation of New Deal. However, Defendants have presented no evidence that any of the agents involved in this case were also involved in FAF or that the agents in this case were directed or supervised by anyone who was involved with FAF. The Defendants have failed to show that in the early Spring of 2011, ATF agents were instructed to focus the Torres investigation toward New Deal for the purpose of steering attention away from the FAF investigation.

At the hearing on July 12, 2012 SA Valles was questioned about what happened when the FAF investigation came to light in the press and before the Congressional committee. SA Valles testified that in early Spring 2011, ATF received a Congressional subpoena requiring ATF to produce all documents related to every active firearms investigation. In response, SA Valles submitted all of the documents related to the Torres investigation and the New Deal investigation because both of those investigations were active in early 2011. SA Valles stated that he submitted those documents up the chain of command to the Phoenix office and that the documents were also provided to the United States Attorneys Office. SA Valles understood the purpose of the subpoena was to make sure that the ATF had not allowed firearms to cross into Mexico.

On cross examination SA Valles was asked why the ATF did not approach Torres until December 2010 even though the ATF learned on August 30, 2010 that Torres had purchased a firearm that was recovered in Mexico. SA Valles responded that at the time the ATF received

the tip from Terri Reese, Torres was placed under surveillance, her information was entered into the NCIS system, and the firearms were placed into the suspect gun program at the ATF so that if they were recovered, the ATF would be notified.  Torres was not approached because the ATF had no direct information that Torres was acting as a straw purchaser for a firearms smuggler, and the ATF lacked probable cause to arrest her.  Over the ensuing three and a half months after receiving the tip, the ATF and HSI investigated Torres, which led to Roman.  Defendants have failed to show any undue delay, or illegal or improper motive on the part of the ATF in its investigation of Torres.  And no evidence links the HSI's investigation of Torres and Roman to FAF.

      Remington Reese argues that prohibiting him from mentioning FAF will violate his Constitutional right to present a complete defense by limiting his ability to cross examine the federal agents' motive in focusing the investigation toward New Deal, especially since Terri Reese initially helped law enforcement by reporting Torres' suspicious purchases.  However, Remington Reese and the other Defendants have presented no proof that the United States tried to cover up FAF by setting up Defendants or New Deal as "scape goats" or by instructing Defendants to sell to suspicious purchasers, as Defendants have alleged.  A complete defense does not include the right to present unsupported theories.

      Terri Reese responds that it is necessary for her to mention FAF and its link to this case in order to effectively cross-examine the United States' expert witness, Paul Hagerty and the agents who will testify at trial.  The United States has offered Paul Hagerty as an expert on international criminal organizations, gun smuggling into Mexico by drug cartels, and illegal exporting by straw purchasers.  Paul Hagerty's evidence regarding Mexican cartel violence and the propensity for cartels to use straw purchasers goes directly to the crimes charged in this case.

The Confrontation Clause does not allow a defendant to cross-examine on irrelevant and unrelated matters. *See Saiz v. Ortiz*, 392 F.3d 1166, 1182 (10th Cir. 2004) (stating that trial judges retain wide latitude under the Confrontation Clause to impose reasonable limits on cross-examination based on concerns about, "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."). *See also Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986) (stating, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.") (citation omitted).

At the hearing on July 12, 2012, Rick Reese's counsel argued that the link between FAF and the investigation of New Deal is evident in the government's use of a known firearms smuggler who worked for a drug cartel, Roman, to conduct their undercover purchases of firearms. By using Roman, the United States adopted Roman's conduct with regard to the twenty-three firearms purchased by Torres, out of which at least six firearms were recovered in Mexico. According to Rick Reese, the government's use of a firearms smuggler links the New Deal investigation with the FAF investigation and its allowance of gun smuggling in an attempt to track weapons to higher members of Mexican drug cartels. However, the evidence shows that this investigation was conducted in a completely different fashion. The record shows that no firearms were allowed to be smuggled into Mexico after Roman became a confidential informant for the United States. This important difference sets this investigation apart from FAF. Defendants have failed to affirmatively link this investigation and FAF.

The United States can choose to pursue investigations in the fashion it thinks best. Countless investigations by the United States involve co-opting a person who has committed a criminal offense as a confidential informant with a quid pro quo on the informant's charges.

This arrangement may be the subject of cross examination at trial of the agents who use informants. However, that cross examination will not include questions regarding FAF. Allowing Defendants to delve into activities related to FAF will impermissibly divert attention from this investigation and the evidence gathered from it to an irrelevant and unrelated, albeit botched, FAF investigation. Based on the information of record, the Court finds that mentioning FAF will mislead and confuse the jury. The United States has shown that the charges in this case were the result of a separate stand-alone investigation of New Deal, and any impeachment of testimony or other evidence related to the New Deal investigation must relate to this investigation and not to FAF.

IT IS ORDERED that the UNITED STATES' MOTION IN LIMINE TO EXCLUDE NON-RELEVANT EVIDENCE OF OTHER UNRELATED INVESTIGATIONS (Doc. No. 234) is granted.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE