IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                             No. CR 11-2294 RB

**RICK REESE, TERRI REESE, and
RYIN REESE,**

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendants' Motion for a New Trial, (Doc. 389), and Motion for Release on Conditions Pending Sentencing, (Doc. 375). On January 28, 2013, the Court held a hearing on these motions. Having considered the evidence, arguments of counsel, and the relevant law, the Court grants these Motions.

**I.    Background**

On August 24, 2011, Rick Reese, Terri Reese, Ryin Reese, and Remington Reese were charged in a thirty-count Indictment with: conspiracy to commit the crimes of making false statements in connection with the acquisition of firearms and smuggling goods from the United States, (Count 1); knowingly making false statements in connection with the acquisition of firearms, (Counts 2-10); smuggling firearms and ammunition from the United States, (Counts 11-28); aiding and abetting (Counts 2-28); and conspiracy to commit money laundering, (Counts 29-30). Defendants were arrested on August 30, 2011. Terri Reese was placed on conditions of release on February 24, 2012. Rick Reese and Ryin Reese have remained in detention since their arrests.

Trial commenced on July 17, 2012. The Government called 16 witnesses in its case-in-

chief, including Luna County Sheriff Deputy Alan Batts. Deputy Batts testified at trial that Terri Reese advised him that New Deal had several multi-gun purchase forms for the Luna County Sheriff's Department. When Deputy Batts came to the store to pick up the forms, Terri Reese drew his attention to a form recording a sale of seven AK-47 pistols to Penny Torres, and Terri Reese informed Agent Batts that she had received a call that a rifle New Deal previously sold to Penny Torres had been recovered in Mexico. At trial, Terri Reese testified and denied any knowledge that guns sold by New Deal went to Mexico. In closing arguments, the prosecution emphasized the discrepancy between the testimony of Deputy Batts and Terri Reese to show not only that Terri Reese had lied, but that Defendants knew the transactions were fraudulent and the guns were going to Mexico. The trial record contains no impeachment evidence concerning Deputy Batts.

At the close of the Government's case, on July 27, 2012, Defendants moved for judgment of acquittal on all counts, pursuant to Federal Rule of Criminal Procedure 29. On July 31, 2012, the Court granted the motion as to Counts 29 and 30, and denied the Motion as to all other counts. Counts 1-28 were submitted to the jury. On August 1, 2012, the jury returned a verdict finding Ryin Reese guilty on Counts 7 and 8 (knowingly making false statements in connection with the acquisition of firearms on June 15, 2011, and July 7, 2011), Rick Reese guilty on Count 9 (knowingly making false statements in connection with the acquisition of firearms on July 29, 2011), and Terri Reese guilty on Count 10 (knowingly making false statements in connection with the acquisition of firearms on July 29, 2011), and acquitting on all other counts. Remington Reese was acquitted on all counts.

Nearly four months later, on November 21, 2012, (the day before Thanksgiving and a four-day court closure) the Government filed a Sealed *Ex Parte* Motion for In Camera Review, asking

the Court to review 126 pages of attachments *in camera* and rule *ex parte* that such information was not subject to disclosure to the defense as impeachment material. *See Giglio v. United States*, 405 U.S. 150, 154 (1972). The documents concerned an FBI investigation of Deputy Batts and other law enforcement officers in Southern New Mexico. On November 28, 2012, the Court directed the Government to serve its seven-page motion on defense counsel and imposed the Government's requested disclosure limitations on Defendants and defense counsel. Defendants Rick Reese and Ryin Reese filed a Motion for Release on Conditions Pending Sentencing on December 5, 2012, in which Terri Reese joined. On December 10, 2012, the Government filed a sealed notice of disclosure stating it had disclosed redacted copies of the 126 pages of material to defense counsel. On December 18, 2012, at a hearing on Defendants' Motion for Release on Conditions Pending Sentencing, Assistant United States Attorney (AUSA) Jim Tierney identified Deputy Batts as a subject of the investigation in open court. The Motion for Release on Conditions was taken under advisement.

On December 31, 2012, Defendants filed the Motion for a New Trial, contending that their Sixth Amendment right to confrontation was violated due to the non-disclosure of the information relating to Deputy Batts. The Government opposes the motion on the grounds that the information is not material, Defendants were not denied the right to confrontation, and the information would not have been admissible at trial. On January 28, 2013, the Court held an evidentiary hearing and heard argument on the Motion for a New Trial. AUSA Richard Williams, FBI Agent Gary Brotan, FBI Agent Joe Acosta, and Deputy Batts testified at the hearing.

**II.  Discussion**

    **A.  Defendants' Sealed Motion for a New Trial**

Rule 33(a) of the Federal Rules of Criminal Procedure permits a court to vacate a

conviction and grant a new trial "if the interest of justice so requires." FED. R. CIV. P. 33(a). Although the trial court may weigh the evidence and assess witness credibility, a motion for new trial is regarded with disfavor and should only be granted with great caution. *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999). "A defendant who seeks a new trial based on an alleged *Brady* violation must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material." *United States v. Velarde*, 485 F.3d 553, 558 (10th Cir. 2007) (internal quotation marks omitted). "If these three factors are satisfied, regardless of the prosecution's intentions in suppressing the evidence, a new trial is justified." *United States v. Torres*, 569 F.3d 1277, 1281 (10th Cir. 2009) (citations omitted). This same three-factor standard applies when a defendant seeks a new trial based on alleged withholding of impeachment materials in violation of *Giglio*. *See Torres*, 569 F.3d at 1281 ("[where] the reliability of a given witness may well be determinative of guilt or innocence, non-disclosure of evidence affecting credibility falls within this general rule."). The good faith or bad faith of the prosecutor has no bearing on the analysis. Accordingly, "whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor." *Giglio,* 405 U.S. at 154. The Tenth Circuit reviews a *Brady* or *Giglio* claim asserted in the context of a motion for a new trial de novo, with any factual findings reviewed for clear error. *United States v. Mendez*, 514 F.3d 1035, 1046 (10th Cir. 2008).

Application of the three-factor analysis leads to the conclusion that a new trial is required. The first factor is clearly satisfied. AUSA Williams testified at the evidentiary hearing that the Las Cruces Branch of the United States Attorney's Office opened an investigative file on certain law enforcement officials in Southern New Mexico in 2002. The information on Deputy Batts dates back to 2003. The file contains specific allegations that Deputy Batts and other law enforcement

officers extorted assets from a drug dealer, assisted Mexican drug cartels, and assisted in alien smuggling. The file had been assigned to a series of AUSAs and, in 2010, AUSA Williams became the primary contact for the FBI regarding the matter. AUSA Williams was aware that the file contained potential *Giglio* information about Deputy Batts.

In August 2011, AUSA Williams reviewed the Prosecution Memorandum[1] for this matter, dated August 18, 2011, and the internal process of the United States Attorney's Office worked exactly as intended. Realizing that Deputy Batts was a potential witness, AUSA Williams alerted the management team of the Las Cruces United States Attorney's Office, including AUSA Randy Castellano and Las Cruces Branch Chief Alfred Perez, that Deputy Batts was the subject of a federal investigation. AUSA Castellano was the direct supervisor of trial counsel AUSAs Maria Armijo and Aaron Jordan.

On May 30, 2012, AUSA Williams sent an e-mail to AUSAs Castellano, Perez, and others recounting that FBI Agent Joe Acosta had called him about Deputy Batts' presence on an Organized Crime Drug Enforcement Task Force. AUSA Williams warned that they needed to consider the situation to avoid *Giglio* problems.[2] On July 13, 2012, another supervisory AUSA sent an e-mail to AUSAs Williams, Castellano, and Perez about Deputy Batts and the task force.

---

[1] The Government objected to disclosure of the Prosecution Memorandum and internal e-mails on the basis of work product. The Court ordered the Government to submit these documents for *in camera* review. Except as referenced herein, the documents will be sealed and incorporated in the record. *See United States v. Armstrong*, 517 U.S. 456, 474-75 (1996) (Breyer, J., concurring in part and concurring in the judgment) (presupposing *Brady* overrides work-product doctrine); *United States v. Kohring*, 637 F.3d 895, 907 (9th Cir. 2011) (holding that prosecutor does not have duty under *Brady* or *Giglio* to disclose opinion work product unless they contain underlying exculpatory facts); *Williamson v. Moore*, 221 F.3d 1177, 1182-83 (11th Cir. 2000) (ruling that work-product doctrine bars disclosure of opinion work product under Brady unless extraordinary circumstances provide exception).

[2] In the e-mail, Mr. Williams mentioned the name of another law enforcement officer who was the subject of the same investigation as Deputy Batts. After an AUSA in the Las Cruces Branch office failed to disclose information about the officer in an unrelated case, the Court granted the defendant a new trial.

AUSA Williams responded with an e-mail to AUSAs, Castellano and Perez that Agent Acosta would like to suggest to the agent in charge of the task force to find a reason to remove Deputy Batts from the task force. On July 19, 2012, AUSA Williams sent an e-mail to AUSAs Castellano and Perez that he had called Agent Acosta to endorse his effort to remove Deputy Batts from the task force. On July 25, 2012, the Government called Deputy Batts to testify on its behalf at trial.

On July 31, 2012, AUSA Williams happened to be in the courtroom observing closing arguments when he learned that Deputy Batts had been called by the Government as a witness at trial. AUSA Williams immediately requested information from the FBI about Deputy Batts' involvement and he received numerous print outs, dated August 1, 2012. In the print outs, Mr. Williams found an FBI report, dated May 5, 2008, of a telephone call from Deputy Batts to Agent Brotan that indicated that Deputy Batts worried that his own credibility was at stake. AUSA Williams informed Branch Chief AUSA Perez and the information proceeded up the chain of command through Criminal Chief Tierney, First Assistant Steven Yarbrough and AUSA Sasha Siemel, the ethics advisor, professional responsibility officer, and *Giglio* requesting official for the United States Attorney. There is no satisfactory explanation why the United States Attorney's Office waited an additional four months to file the *ex parte* motion.

From the foregoing there can be no doubt that the information pertaining to Deputy Batts was in a file at the United States Attorney's Office for nearly a decade prior to trial. The direct supervisor of trial counsel, Mr. Castellano, was informed, and was repeatedly reminded, by a fellow supervising AUSA that his own office possessed *Giglio* information concerning Deputy Batts.[3] As Mr. Castellano was present at the hearing, but did not testify, the Court is left to wonder

---

[3] It bears noting that Ms. Armijo, lead trial counsel herein, was also Branch Chief of the Las Cruces United States Attorney's Office from 2005 to 2008, a critical period in the Batts investigation.

whether he, appropriately, passed the information on to Ms. Armijo and Mr. Jordan or, inexplicably, sat on it. Regardless of the reason why the warnings went unheeded (or, more darkly, were ignored), there is no doubt that the prosecution, intentionally or negligently, suppressed the evidence.

The second factor is also satisfied. The evidence was favorable to the Defendants as it impeached a Government witness and would have put the entire investigation in a negative light. The jury convicted on the counts in which the Government agents, rather than a confidential informant, participated in the sales. Undoubtedly, the jury gave credence to the testimony of the agents. Any information that would cast doubt on the integrity of the investigation would have been favorable to the defense. The Government's contention that Batts' involvement was temporally remote from the facts associated with the counts of conviction is not persuasive as the significance of the suppressed evidence must be evaluated in relation to the record as a whole. *See United States v. Hughes*, 33 F.3d 1248, 1252 (10th Cir. 1994).

The Government's assertion that the suppressed evidence would have been inadmissible under Federal Rule of Evidence 608 is similarly misplaced. The Government raised Rule 608 in its response brief and then largely abandoned this argument at the hearing. Regardless, the right to cross-examine accusing witnesses is grounded in the Sixth Amendment to the United States Constitution, which guarantees the right of the accused "to be confronted with the witnesses against him." U.S. Const. amend VI. The Supreme Court has confirmed that motivation and bias are proper subjects for cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986); *Davis v. Alaska*, 415 U.S. 308, 316 (1974). This encompasses the right "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis*, 415 U.S. at 318. The Tenth Circuit has

recognized that, "[in *Davis* and *Van Arsdall*], the Court held that the right of confrontation was infringed when the trial judge excluded an entire area of possible bias of a government witness from inquiry by defense counsel." *United States v. Sarracino*, 340 F.3d 1148, 1167 (10th Cir. 2003).

Nonetheless, a defendant's right to cross-examination has limits, and "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. Accordingly, under Rule 608(b), it is within the trial court's discretion whether to allow specific instances of the conduct of a witness, for the purpose of attacking the witness' character for truthfulness, to be inquired into on cross-examination of the witness. *See* Fed. R. Evid. 608(b). Moreover, the Advisory Committee Notes following the text of Rule 608(b) state that "the overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury, and that of Rule 611 bars harassment and undue embarrassment." *Id.* Advisory Committee's Note (b)(2). However, by withholding the evidence, the Government foreclosed the opportunity for the parties to litigate, and for the Court to determine, the admissibility of the evidence at trial.

The Government seeks to minimize its error by arguing that the suppressed evidence would not have been admissible. The belated attempt to argue admissibility in response to the motion for a new trial is particularly misplaced in light of Deputy Batts' testimony at the evidentiary hearing. The suppressed documents include an FBI report detailing a May 5, 2008 telephone conversation between Deputy Batts and Agent Brotan, where Deputy Batts related information about a Luna County law enforcement officer who was under investigation and

Deputy Batts claimed he was not involved in misconduct. At the evidentiary hearing, Agent Brotan testified that the phone call occurred. Deputy Batts testified that no such phone call had ever occurred and he would have remembered making such a phone call. Agent Brotan's testimony is corroborated by his contemporaneous report. If Deputy Batts did make the phone call it may be inferred that he knew about the FBI investigation and he had a motive to curry favor with the Government by embellishing his trial testimony. The fact that Deputy Batts' testimony contradicted the testimony of Agent Brotan further impugned his credibility. Deputy Batts' testimony at the evidentiary hearing would have reinforced a defense argument for admissibility of the information at trial.

Deputy Batts' credibility was vitally important at trial. Deputy Batts testified at trial that Terri Reese told him that one of the rifles that New Deal sold to Penny Torres had been recovered in Mexico. Terri Reese testified at trial that the Defendants did not know the guns went to Mexico. Knowledge of the illegality of the sales was a central issue at trial. The importance of Deputy Batts' testimony is underscored by the fact that the trial AUSAs referenced his testimony, and his supposed lack of a motivation to lie, several times during closing arguments to discredit Terri Reese. Defendants were deprived of an opportunity to present Deputy Batts' motivation to lie to the jury. Simply put, the ability to impeach Deputy Batts would have favored the Defendants.

Third, and finally, the evidence was material. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Ahrensfield*, 698 F.3d 1310, 1319 (10th Cir. 2012) (*quoting United States v. Bagley*, 473 U.S. 667, 682 (1985) (Blackmun, J., concurring))

9

(internal quotation marks omitted). "The critical question is whether the lack of impeachment evidence shakes our confidence in the guilty verdict." *United States v. Smith*, 534 F.3d 1211, 1223 (10th Cir. 2008). "What might be considered insignificant evidence in a strong case might suffice to disturb an already questionable verdict." *Torres*, 569 F.3d at 1282 (quoting *United States v. Robinson*, 39 F.3d 1115, 1119 (10th Cir. 1994)) (internal quotation marks omitted). Obviously, the jury did not believe this was a strong case. After the Court directed a verdict on two counts, the jury acquitted the Defendants on 24 of the remaining 28 counts. The newly disclosed evidence involved a critical witness as evidenced by the repeated references to his testimony in closing arguments. The prosecution focused on the contradiction in the testimony of Deputy Batts and Terri Reese in closing arguments, calling into question Terri Reese's credibility. Impeachment information about Deputy Batts, a key investigator and government witness, could have easily altered the outcome of the trial. Viewing the significance of the suppressed evidence in relation to the record as a whole, *see Hughes*, 33 F.3d at 1252, the Court concludes that Defendants' Motion for New Trial should be granted.

      **B.**    **Defendants' Motion for Release on Conditions**

The Bail Reform Act allows the detention of a defendant pending trial "only if a judicial officer finds 'that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003) (quoting 18 U.S.C. § 3142(e)). The United States must prove risk of flight by a preponderance of the evidence, *see Cisneros*, 328 F.3d at 617, and it must prove dangerousness by clear and convincing evidence. 18 U.S.C. § 3142(f). The burden of persuasion always remains with the United States. *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002). Resolution of this matter has been unreasonably delayed by the

Government. The Court finds that the Government has not met its burden of persuasion to prolong the detention of Rick Reese and Ryin Reese.

The Court adopts the recommendations of Pretrial Services and orders Rick Reese released on a $10,000 secured bond and the following conditions of release: (1) Pretrial Services supervision; (2) location monitoring; (3) maintain or actively seek employment; (4) travel restricted to county of residence with direct travel to Las Cruces, New Mexico for court appearances; (5) Pretrial Services is authorized to expand travel range within the State of New Mexico, if such travel becomes necessary; (6) no travel to Mexico; (7) surrender passport to Pretrial Services and do not apply for a new passport; (8) refrain from possessing a firearm, destructive device, or other dangerous weapon; and, (9) release is stayed until Pretrial Services notifies the United States Marshal Service that the defendant has satisfied all the preconditions of release.

The Court adopts the recommendations of Pretrial Services and orders Ryin Reese released on a $10,000 secured bond and the following conditions of release: (1) Pretrial Services supervision; (2) location monitoring; (3) maintain or actively seek employment; (4) travel restricted to county of residence with direct travel to Las Cruces, New Mexico for court appearances; (5) Pretrial Services is authorized to expand travel range within the State of New Mexico, if such travel becomes necessary; (6) no travel to Mexico; (7) surrender passport to Pretrial Services and do not apply for a new passport; (8) refrain from possessing a firearm, destructive device, or other dangerous weapon; and, (9) release is stayed until Pretrial Services notifies the United States Marshal Service that the defendant has satisfied all the preconditions of release.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for a New Trial, (Doc. 389), and Defendants' Motion for Release, (Doc. 375), are **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**